UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BOLLINGER MOTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:23-cv-00811 |
| ROSS COMPTON AND ALL TERRAIN | ) | |
| ALL ELECTRIC LTD. (d/b/a MUNRO | ) | |
| VEHICLES), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Bollinger Motors, Inc. ("Bollinger"), by and for its Complaint against Defendants Ross Compton ("Compton") and All Terrain All Electric Ltd. (d/b/a Munro Vehicles, "Munro") (collectively, "Defendants"), alleges to the Court as follows:

**THE PARTIES**

1.     Bollinger is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 14925 West Eleven Mile Road, Oak Park, Michigan 48237.

2.     Bollinger is informed and believes that Compton is an individual residing at 16 Garrod Approach, Melton, Woodbridge, England, IP12 1TD.

3.     Bollinger is informed and believes that Munro is a private limited company formed and existing pursuant to the laws of Scotland and registered as company number SC635202 with its principal place of business and registered offices located at Unit 1b, Langlands Commercial Park Kelvin Park South, East Kilbride, Glasgow, Scotland, G75 0RH.

**JURISDICTION AND VENUE**

4.      This an action at law and in equity for breach of contract and intentional interference with contractual relationship under New York Law, patent infringement under 35 U.S.C. § 271, *et seq*., unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and substantial and related claims of trade dress infringement and unjust enrichment under the common law of the State of New York.

5.      The Court has subject matter jurisdiction over the breach of contract claims pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between Bollinger and Defendants, and (ii) more than $75,000, exclusive of interest and costs, is at stake.

6.      In addition, the Court has subject matter jurisdiction over the trade dress-related claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a)-(b), and supplemental jurisdiction over the overlapping claims arising under the common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

7.      Likewise, the Court has subject matter jurisdiction over the patent-related claims pursuant to 35 U.S.C. § 271, *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related claims arising under the common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

8.      The Court also has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because Defendants are not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and law.

9.     Venue properly lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because, at a minimum, Defendants are subject to personal jurisdiction in this District. The Mutual Nondisclosure Agreement entered into by Plaintiff and Compton also provides that the "Agreement shall be governed by the laws of the State of New York, without reference to conflict of laws principles." (Exhibit A.)

## FACTUAL BACKGROUND

### The Patents-in-Suit

10.     Bollinger is the assignee and owner of United States Design Patent No. D836,027 ("the '027 patent"), which covers an original and unique vehicle design. The '027 patent, entitled "Vehicle," was duly and legally issued by the United States Patent and Trademark Office on December 18, 2018, from Application Serial No. 29/612,005, filed on July 27, 2017. A true and correct copy of the '027 patent is attached hereto as Exhibit B.

11.     Bollinger is the assignee and owner of United States Design Patent No. D836,487 ("the '487 patent"), which covers an original and unique vehicle design. The '487 patent, entitled "Vehicle," was duly and legally issued by the United States Patent and Trademark Office on December 25, 2018, from Application Serial No. 29/612,008, filed on July 27, 2017. A true and correct copy of the '487 patent is attached hereto as Exhibit C.

12.     The '027 patent and the '487 patent are collectively referred to herein as the "Patents-in-Suit."

### Bollinger's Novel and Distinctive Vehicle Designs Are Protected by the Patents-in-Suit and Common Law Trade Dress Rights

13.     Originally founded in New York's Catskills Mountains in 2015, Bollinger has become renowned in the field of electric vehicle design for its innovative technology and the appealing ornamental appearance of its vehicles.

14.    In 2017, after significant engineering and development expense, Bollinger became the first company to unveil an all-electric, Class 3 sport utility vehicle – Bollinger's B1 SUV. The B1 was truly innovative, having been engineered from the ground up with an all-electric powertrain, unique storage options, all-aluminum chassis, adjustable hydropneumatic suspension, and convertible cab panels.

15.    Bollinger's B1 would quickly be followed by the B2, a similar, pickup truck style vehicle, which was unveiled in 2019.

16.    Bollinger's B1 and the B2 vehicles have the novel and distinctive designs embodied in the Patents-in-Suit. Exemplary Bollinger vehicles embodying the Patents-in-Suit are depicted below alongside certain of the embodiments disclosed in the Patents-in-Suit.



*Bollinger B1*          *'487 patent*

*Bollinger B2*          *'027 patent*

17.    Bollinger's vehicles, including the B1 and B2 depicted above, have a unique and distinctive appearance. For example, unlike most other fully electric vehicles available in the market, Bollinger's vehicle designs feature exposed hardware and hinges, extensive use of flat

surfaces, aesthetic chamfered surfaces, flat and parallel body lines, and a distinctive wheel arch shape.

18.    The Bollinger vehicle trade dress is not functional.

19.    Bollinger has extensively advertised and promoted vehicles bearing its ornamental and non-functional vehicle trade dress, including the B1 and B2. As a result of time, effort, and money invested in its vehicle trade dress, Bollinger's vehicle trade dress has acquired secondary meaning, significant goodwill, and serves uniquely to identify Bollinger's vehicles. Bollinger's vehicle trade dress has become an asset of incalculable value as a symbol of Bollinger's high quality vehicles, which is readily recognizable in the market.  (*See, e.g.*, Exhibits D-I.)

20.    Bollinger owns the exclusive right, title, and interest in and to the inventions claimed in the Patents-in-Suit and to the common law trade dress rights in its vehicle designs.

## The Mutual Nondisclosure Agreement

21.    In or around 2015, Bollinger contracted with Compton to assist with designing certain aspects of its vehicles, which were then still in development.

22.    As a part of this contractual arrangement, on February 16, 2015, Bollinger – then known as Bollinger Motors, LLC – and Compton entered into a Mutual Nondisclosure Agreement, under the terms of which Compton was given access to various Bollinger intellectual property and other materials that Compton was under contractual obligations to maintain as confidential and to destroy or return upon the termination of his contractor relationship with Bollinger.

23.    More specifically, the Purpose of the Mutual Nondisclosure Agreement states that, "[t]he parties wish to explore a business opportunity of mutual interest and in connection with this opportunity, each party may disclose to the other party certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential." (Exhibit A at "Purpose.")

24.     Under the Mutual Nondisclosure Agreement, "Confidential Information" is defined

as follows:

> "Confidential Information" means any information disclosed by
> either party to the other party, either directly or indirectly, in writing,
> orally or by inspection of tangible objects, including without
> limitation documents, prototypes, samples, plant and equipment,
> research, product plans, products, services, customer lists, software,
> developments, inventions, processes, designs, drawings,
> engineering, hardware configuration, marketing materials or
> finances, which is designated as "Confidential," "Proprietary" or
> some similar designation. Information communicated orally shall be
> considered Confidential Information. Confidential Information may
> also include information disclosed to a disclosing party by third
> parties. Confidential Information shall not, however, include any
> information which (i) was publicly known and made generally
> available in the public domain prior to the time of disclosure by the
> disclosing party; (ii) becomes publicly known and made generally
> available after disclosure by the disclosing party to the receiving
> party through no action or inaction of the receiving party; (iii) is
> already in the possession of the receiving party at the time of
> disclosure by the disclosing party as shown by the receiving party's
> files and records immediately prior to the time of disclosure; (iv) is
> obtained by the receiving party from a third party without a breach
> of such third party's obligations of confidentiality; (v) is
> independently developed by the receiving party without use of or
> reference to the disclosing party's Confidential Information, as
> shown by documents and other competent evidence in the receiving
> party's possession; or (vi) is required by law to be disclosed by the
> receiving party, provided that the receiving party gives the
> disclosing party prompt written notice of such requirement prior to
> such disclosure and assistance in obtaining an order protecting the
> information from public disclosure.

(*Id.* at "Confidential Information.")

25.     Pursuant to the Mutual Nondisclosure Agreement's "Non-use and Non-disclosure"

provision, Compton agreed that he "shall not use the Confidential Information of the other party

for any purpose except to evaluate and engage in discussions concerning a potential business

relationship between the parties. Neither party shall disclose any Confidential Information of the

other party to third parties. If any party makes copies of the Confidential information of the other

party, such copies shall also constitute Confidential Information and any and all confidential markings on such documents shall be maintained. Neither party shall reverse engineer, disassemble or decompile any prototypes, software or other tangible objects which embody the other party's Confidential Information and which are provided to the party hereunder." (*Id.* at "Non-use and Non-disclosure.")

26.     Pursuant to the Mutual Nondisclosure Agreement's "Maintenance of Confidentiality" provision, Compton agreed that he "shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party. Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information, and shall promptly notify the disclosing party of any misuse or misappropriation of Confidential Information of which it becomes aware. Each party shall disclose Confidential Information only to those officers, directors, employees and contractors who are required to have the information in order to evaluate or engage in discussions concerning the contemplated business relationship, and such party shall remain responsible for compliance with the terms of this Agreement by its officers, directors, employees and contractors." (*Id.* at "Maintenance of Confidentiality.")

27.     Bollinger was originally formed under Michigan law as Bollinger Motors, LLC, which was converted to a Delaware corporation – Bollinger Motors, Inc. – on October 12, 2020. Under both Delaware and Michigan law, Bollinger Motors, Inc. is considered to be the same entity as Bollinger Motors, LLC and retains all rights, privileges, powers, and interests of Bollinger Motors, LLC, including all rights and interests under the Mutual Nondisclosure Agreement. Del. Code Ann. tit. 8, § 265(f); Mich. Comp. Laws Serv. § 450.4709(3)(c)-(d).

**Defendants' Unlawful and Infringing Acts**

28.     Sometime after the termination of his contractual relationship with Bollinger, Munro hired Compton. Upon information and belief, Compton is currently Munro's head of design and was directly involved in the design of Munro's new MK_1 vehicle.

29.     Notwithstanding Bollinger's rights, Compton, without permission or authorization, retained Bollinger intellectual property and other materials constituting Confidential Information under the Mutual Nondisclosure Agreement and disclosed such materials to Munro in violation of the Mutual Nondisclosure Agreement. Upon information and belief, Compton retained and disclosed these materials for purposes of designing and developing Munro's MK_1 vehicle and other vehicles that copy and compete with Bollinger vehicles having the novel and distinctive designs embodied in the Patents-in-Suit and incorporating Bollinger's vehicle trade dress.

30.     Notwithstanding Bollinger's rights, Compton also retained Bollinger intellectual property and other materials constituting Confidential Information under the Mutual Nondisclosure Agreement and disclosed such materials to the public on Compton's by posting at least portions thereof to his websites and/or social media accounts.

31.     Notwithstanding Bollinger's rights, Defendant Munro, without permission or authorization, has advertised and offered for sale and, upon information and belief, continues to advertise and offer for sale certain vehicles which infringe at least one claim of the Patents-in-Suit and infringe Bollinger's common law trade dress rights.

32.     The following are depictions of Munro's MK_1 vehicle, which upon information and belief, were designed by Compton and being promoted, including in the United States, by Munro:



*Munro MK_1*



*Munro MK_1*



*Munro MK_1*



*Munro MK_1*

Munro's MK_1 vehicle and all other similar appearing vehicles are herein referred to in collectively as the "Infringing Vehicles."

33.    Upon information and belief, notwithstanding its knowledge of Bollinger's intellectual property, Munro continues to offer for sale the Infringing Vehicles and continues to deliberately and willfully infringe the Patents-in-Suit in violation of Bollinger's rights.

### COUNT I – BREACH OF CONTRACT
### (AS TO COMPTON)

34.    Bollinger repeats and realleges every allegation contained in Paragraphs 1-33 as if set forth fully herein.

35.    On February 16, 2015, Bollinger and Compton agreed and executed the Mutual Nondisclosure Agreement. (Exhibit A.)

36.    Bollinger has performed all of its obligations under the Mutual Nondisclosure Agreement.

37.     Notwithstanding his obligations under the Mutual Nondisclosure Agreement, including those detailed in Paragraphs 21-26, above, Compton improperly retained, misused, and disclosed Bollinger's Confidential Information in ways that violate certain provisions of the Mutual Nondisclosure Agreement before the termination of the Mutual Nondisclosure Agreement.

38.     For example, upon information and belief, in violation of at least the Mutual Nondisclosure Agreement's "Non-use and Non-disclosure" and "Maintenance of Confidentiality" provisions, Compton retained Bollinger materials and intellectual property (including, but not limited to, Bollinger CAD files) following the conclusion of his work for Bollinger and, when later hired by Munro, leveraged those materials and intellectual property to design and create the Infringing Vehicles.

39.     As another example, upon information and belief, Compton has also taken screenshots of CAD models produced for Bollinger and governed by the terms of the Mutual Nondisclosure Agreement and posted those images to his and his companies' social media accounts for purposes of self-promotion. This is also a violation of at least the Mutual Nondisclosure Agreement's "Non-use and Non-disclosure" and/or its "Maintenance of Confidentiality" provision.

40.     Despite Bollinger's requests that Compton remedy his breaches of the Mutual Nondisclosure Agreement, upon information and belief, Compton has neither taken any steps to cease and desist from his breaches of the Mutual Nondisclosure Agreement nor sought to recover Bollinger's Confidential Information from Munro or any other third parties with whom he improperly shared Bollinger's Confidential Information in violation of the Mutual Nondisclosure Agreement.

41.      As a result of Compton's breaches of the Mutual Nondisclosure Agreement, Bollinger has suffered monetary damages, in an amount to be determined at the time of trial, including, but not limited to the calculation of harm resulting from the detraction and damage to Bollinger's positive standing and reputation in the electric vehicle community as well as any adverse impact on Bollinger's ability to assert its patents and protect its valuable intellectual property due to Compton's misuse of Bollinger's Confidential Information.

42.      In addition to seeking monetary damages against Compton and because Compton's breach of the Mutual Nondisclosure Agreement will cause irreparable harm and monetary damages alone would not be an adequate remedy, Bollinger seeks a preliminary and permanent injunction against Compton, requiring Compton to perform as required under the Mutual Nondisclosure Agreement.

### COUNT II – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (AS TO MUNRO)

43.      Bollinger repeats and realleges every allegation contained in Paragraphs 1-42 as if set forth fully herein.

44.      Upon information and belief, Munro was aware of the contractual relationship between Bollinger and Compton, including the Mutual Nondisclosure Agreement, when it hired Compton.

45.      Munro has induced, and continues to induce, Compton to breach his contractual undertakings with Bollinger by recruiting and hiring Compton to produce and provide vehicle designs leveraging Bollinger materials and intellectual property.

46.    Munro's actions in inducing these breaches of contract were and are intentional, illegal, and fraudulent, and have been engaged in for the specific purpose of inducing Compton to breach his agreement with Bollinger.

47.    As a result of Munro's intentional interference with contractual relations between Bollinger and Compton, Bollinger has suffered monetary damages, in an amount to be determined at the time of trial, including, but not limited to the calculation of harm resulting from the detraction and damage to Bollinger's positive standing and reputation in the electric vehicle community as well as any adverse impact on Bollinger's ability to assert its patents and protect its valuable intellectual property due to Munro's inducement of Compton's breach of his contractual relationship with Bollinger.

48.    In addition to seeking monetary damages against Munro and because Munro's intentional interference with contractual relations will cause irreparable harm and monetary damages alone would not be an adequate remedy, Bollinger seeks a preliminary and permanent injunction against Munro, requiring Munro to cease and desist from any use (direct or indirect) of Bollinger materials and intellectual property.

## COUNT III – INFRINGEMENT OF U.S. DESIGN PATENT NO. D836,027
### (AS TO ALL DEFENDANTS)

49.    Bollinger repeats and realleges every allegation contained in Paragraphs 1-48 as if set forth fully herein.

50.    The '027 patent is valid and enforceable.

51.    Bollinger is the owner of all right, title, and interest in and to the designs covered by the '027 patent, and Bollinger is entitled to receive all damages and the benefits of all other remedies for Defendants' infringement.

52.     Without permission or authorization from Bollinger, Defendants have offered for sale and, upon information and belief, continue to offer for sale products including, without limitation, the Infringing Vehicles, which infringe the '027 patent.

53.     Figures 1 and 4 from the '027 patent illustrate the claimed ornamental design for a vehicle:



FIG. 1

FIG. 4

54.    Defendants' Infringing Vehicles contain each and every aspect of the claimed designs in the '027 patent.

55.    Defendants' Infringing Vehicles have an overall appearance that is substantially similar to the claimed designs in the '027 patent.

56.    Upon information and belief, Munro has had actual notice of the '027 patent since at least December 9, 2022, and Compton has had actual notice of the '027 patent since at least December 14, 2022.

57.    Upon information and belief, Defendants' infringement of the '027 patent has been and continues to be willful.

58.    Defendants' conduct has caused and will continue to cause Bollinger substantial damage, including irreparable harm, for which Bollinger has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '027 patent.

**COUNT IV – INFRINGEMENT OF U.S. DESIGN PATENT NO. D836,487**
**(AS TO ALL DEFENDANTS)**

59.    Bollinger repeats and realleges every allegation contained in Paragraphs 1-58 as if set forth fully herein.

60.    The '487 patent is valid and enforceable.

61.    Bollinger is the owner of all right, title, and interest in and to the designs covered by the '487 patent, and Bollinger is entitled to receive all damages and the benefits of all other remedies for Defendants' infringement.

62.    Without permission or authorization from Bollinger, Defendants have offered for sale and, upon information and belief, continue to offer for sale products including, without limitation, the Infringing Vehicles, which infringe the '487 patent.

63.    Figures 1 and 4 from the '487 patent illustrate the claimed ornamental design for a vehicle:



FIG. 1

FIG. 4

64.    Defendants' Infringing Vehicles contain each and every aspect of the claimed designs in the '487 patent.

65.    Defendants' Infringing Vehicles have an overall appearance that is substantially similar to the claimed designs in the '487 patent.

66.    Upon information and belief, Munro has had actual notice of the '487 patent since at least December 9, 2022, and Compton has had actual notice of the '487 patent since at least December 14, 2022.

67.    Upon information and belief, Defendants' infringement of the '487 patent has been and continues to be willful.

68.    Defendants' conduct has caused and will continue to cause Bollinger substantial damage, including irreparable harm, for which Bollinger has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '487 patent.

## COUNT V – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)
### (AS TO ALL DEFENDANTS)

69.    Bollinger repeats and realleges every allegation contained in Paragraphs 1-68 as if set forth fully herein.

70.    In addition to its patented vehicle designs, Bollinger also owns valuable common law trade dress rights in the design and appearance of its vehicles. By virtue of Bollinger's use of such trade dress in connection with the advertisement and promotion of its vehicles, including specifically its B1 and B2 vehicles, Bollinger's trade dress has gained widespread consumer recognition and has developed valuable associated goodwill.

71.    Without the consent or authorization of Bollinger, Defendants are using Bollinger's vehicle trade dress in connection with the development, advertisement, and promotion of the Infringing Vehicles and in connection with Defendants' respective websites and/or social media accounts that advertise and promote the Infringing Vehicles. Several side-by-side comparisons of representative Bollinger vehicles and representative Infringing Vehicles are provided below:



*Bollinger B2 SUT*



*Munro MK_1*



*Bollinger B1 Chassis Cab Concept*



*Munro MK_1 Chassis Cab Concept*



*Bollinger B1*



*Munro MK_1*

72.    Indeed, third parties have expressly commented on the obvious aesthetic similarities between the Infringing Vehicles and Bollinger's well-known vehicles. For example, on December 7, 2022, Autoweek published an article about one of the Infringing Vehicles, Munro's original MK_1, titled, "Curiously Bollinger-Like EV Rolls Out from UK Startup Munro," that commented on the obvious visual similarities between the MK_1 and Bollinger's B1 and further reported that "[t]he styling is the work of a young Brit called Ross Compton who, you

17

might not be entirely surprised to hear looking at his creation, formerly worked for Bollinger." (Exhibit D, https://www.autoweek.com/news/green-cars/a42180020/uk-startup-munro-mk1-ev-reveal/.) Numerous other articles have made similar observations about the marked similarities between the MK_1 and Bollinger's vehicles. (*E.g.,* Exhibit E, https://expeditionportal.com/is-it-a-bollinger-is-it-a-defender-yes-and-no-it-is-the-munro-mk1/ ("You might be forgiven for thinking that the boxy Scottish Munro EV MK1 is a repurposed Bollinger EV SUV as the two vehicles are remarkably similar. The reason for this is quite simple: Ross Compton, the creative force behind Munro MK1 was, before the shelving of the Bollinger B1 and B2 SUVs, a member of the Bollinger design team."); Exhibit F, https://www.motor1.com/news/625192/munro-mk1-debut-specs-photos/ ("If the boxy design seems familiar, you're not alone since it reminds us of the Bollinger B1 . . . ."); Exhibit G, https://www.gearpatrol.com/cars/a42165713/munro-mk1-electric-suv/ ("The Mk1 bears more than a passing resemblance to the Bollinger Motors B1 . . . . That's not so coincidental as Munro's design head Ross Compton worked as a designer at Bollinger Motors."); Exhibit H, https://www.thedetroitbureau.com/2022/12/british-startup-munro-to-make-all-electric-4x4/ (The MK_1 "might easily be mistaken for the erstwhile Bollinger B1 . . . ."); Exhibit I, https://www.autoevolution.com/news/munro-mk1-is-a-reasonably-priced-utilitarian-electric-off-roader-with-an-oversized-ego-205626.html (The MK_1's "design is a little too similar to the Bollinger B1 . . . .").)

73.    Defendants' unauthorized use in commerce of Bollinger's vehicle trade dress is likely to cause confusion as to (1) the affiliation, connection, and/or association between Defendants and Bollinger; (2) the sponsorship, endorsement, and/or approval of Defendants' Infringing Vehicles by Bollinger; and (3) the origin of Defendants' Infringing Vehicles. Defendants' conduct therefore violates 15 U.S.C. § 1125(a).

74.    Upon information and belief, Defendants' infringement of Bollinger's common law vehicle trade dress as well as Defendants' unfair competition and false designation of origin have been and are done deliberately, willfully, and in bad faith.

75.    As a direct and proximate result of Defendants' unlawful acts, Bollinger has been damaged and Defendants have been unjustly enriched, in an amount to be determined at trial.

76.    Unless preliminarily and permanently enjoined by the Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Bollinger for which it has no adequate remedy at law.

77.    Pursuant to 15 U.S.C. §§ 1116-1117, Bollinger is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to its attorneys' fees.

## COUNT VI – UNFAIR COMPETITION UNDER NEW YORK LAW
## (AS TO ALL DEFENDANTS)

78.    Bollinger repeats and realleges every allegation contained in Paragraphs 1-77 as if set forth fully herein.

79.    Defendants' actions, as described above, have and are likely to cause confusion with and be mistaken for Bollinger's activities in the mind of the public.

80.    By creating, advertising, promoting, and offering for sale vehicles incorporating Bollinger's trade dress, Defendants have misappropriated Bollinger's labors, skills, expenditures, investment, and goodwill.

81.    Upon information and belief, Defendants' conduct as alleged herein has been and is done deliberately and willfully and is intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of and between Bollinger and Defendants and as to the nature, characteristics, and qualities of the parties' respective goods.

82.     Upon information and belief, Defendants' conduct as alleged herein has also been and is done in bad faith, as evidenced by the extensive similarities between the Infringing Vehicles and Bollinger's vehicles incorporating Bollinger's trade dress. For example, as seen in Paragraph 32, above, Defendants' Infringing Vehicles copy at least the exposed hardware and hinges, extensive use of flat surfaces, flat and parallel body lines, aesthetic chamfered surfaces, and distinctive wheel arch shape featured in Bollinger's vehicle trade dress. Various third parties have also commented on the obvious similarities between the Infringing Vehicles and Bollinger's vehicles. (*E.g.,* Exhibits D-I.)

83.     As a direct and proximate result of Defendants' unlawful acts, Bollinger has been damaged and Defendants have been unjustly enriched in an amount to be determined at trial.

84.     Unless preliminarily and permanently enjoined by the Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Bollinger for which it has no adequate remedy at law.

## COUNT VII – UNJUST ENRICHMENT
## (AS TO MUNRO, IN THE ALTERNATIVE AS TO COMPTON)

85.     Bollinger repeats and realleges every allegation contained in Paragraphs 1-84 as if set forth fully herein.

86.     Bollinger has invested significant capital, resources, and goodwill in growing its business, developing its distinctive vehicle trade dress, and acquiring patent protection in its novel vehicle designs.

87.     Defendants' use of Bollinger's patented designs, vehicle trade dress, and other confidential information and materials conferred significant monetary benefits upon Defendants by enabling them to offer products in the market place that they would otherwise not have been able to offer.

88.     Defendants have been unjustly enriched at the expense of Bollinger by virtual of their improper actions, as described above.

89.     It would be against equity and good conscience for Defendants to retain the economic benefits that they derived from their conduct.

90.     Bollinger is entitled to disgorgement and restitution in an amount to be determined at trial of all economic benefits that Defendants derived from their unauthorized use of Bollinger's patented designs, vehicle trade dress, and confidential information and materials.

91.     As to Munro, Bollinger pleads Count VII as an additional claim to those set forth in Counts II-VI.

92.     As to Compton, Bollinger pleads Count VII of the Complaint in the alternative pursuant to Rule 8(a)(3). If Bollinger is not awarded complete relief under Count I—its cause of action for breach of the Mutual Nondisclosure Agreement—it should be awarded damages based on Compton's unjust enrichment.

## PRAYER FOR RELIEF

Wherefore, Bollinger respectfully requests that the Court enter and Order and Judgment against Defendants as follows:

A.      For a judgment that Compton breached the Mutual Nondisclosure Agreement;

B.      For a judgment that Munro intentionally interfered with the contractual relationship between Bollinger and Compton;

C.      For an order awarding Bollinger its monetary damages as a result of Compton's breaches of the Mutual Nondisclosure Agreement and Munro's interference with contractual relationship;

D.      For a judgment that Defendants have infringed the '027 and '487 patents;

E.      For a judgment and award that Defendants account for and pay to Bollinger damages adequate to compensate for Defendants' infringement of the '027 and '487 patents, which is in no event less than a reasonable royalty;

F.      For a judgment and award of Defendants' total profits in an amount subject to proof at trial, pursuant to 35 U.S.C. § 289;

G.      For a finding that Defendants' patent infringement is willful and an award of increase damages for willful infringement pursuant to 35 U.S.C. § 284;

H.      For a preliminary and permanent injunction enjoining Defendants and their respective agents, officers, directors, employees, and all persons in privity or active concert or participation with them, directly or indirectly, from infringing, inducing others to infringe, or contributing to the infringement of the '027 and '487 patents;

I.      For a judgment that Defendants have engaged in unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) and in trade dress infringement and unfair competition in violation of New York common law;

J.      For a judgment that Defendants' trade dress infringement was willful;

K.      For an order awarding Bollinger, under 15 U.S.C. § 1117, all profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' infringement of Bollinger's trade dress rights (including, but not limited to, damages awarded pursuant to 15 U.S.C. § 1117 trebled);

L.      For a preliminary and permanent injunction enjoining Defendants and their respective agents, officers, directors, employees, and all persons in privity or active concert or participation with them, directly or indirectly, from infringing Bollinger's trade dress;

M.      For a judgment that Defendants have been unjustly enriched and awarding Bollinger restitution of all economic benefits that Defendants derived from their misconduct;

N.      For a judgment and award of any supplemental damages sustained by Bollinger for any continuing post-verdict infringement of the '027 and '487 patents or infringement of Bollinger's trade dress rights until entry of final judgment with an accounting as needed;

O.      For an order finding that this case is an exceptional case under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117(a) and awarding Bollinger its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendants;

P.      For an award to Bollinger of pre-judgment interest, post-judgment interest, and costs in this action; and

Q.      For an award of such other relief to Bollinger as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Bollinger demands a trial by jury on all issues so triable.

Dated:  January 31, 2023                    Respectfully submitted,


                                            _/s/ Marcella M. Jayne_
                                            Marcella Jayne, NY Bar No. 5681374
                                            Foley & Lardner LLP
                                            90 Park Avenue
                                            New York, NY 10016-1314
                                            Telephone: 212.682.7474
                                            Facsimile: 212.687.2329

                                            *Of Counsel*

                                            Kadie M. Jelenchick, *pro hac vice* to be filed
                                            Sarah E. Rieger, *pro hac vice* to be filed
                                            Foley & Lardner LLP
                                            777 East Wisconsin Avenue
                                            Milwaukee, WI 53202-5306
                                            Telephone: 414.271.2400
                                            Facsimile: 414.297.2400

                                            *Attorneys for Bollinger Motors, Inc.*